IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL INDICTMENT** |
| v. | **NO. 1:15-CR-00004-AT-GGB** |
| **LINDA WORTH,** | |
| **Defendant.** | |

## FINAL REPORT AND RECOMMENDATION

## AND ORDER

A federal grand jury returned an indictment on January 6, 2015 charging Linda Worth ("Defendant") with conspiracy to accept a payment of a gratuity by a public official, in violation of 18 U.S.C. § 371 (Count One); receipt of a gratuity by a public official, in violation of 18 U.S.C. § 201(c)(1)(B) (Count Two); and conflict of interest by a government employee, in violation of 18 U.S.C. §§ 208(a), 216(a)(2) (Count Three).

Pending before this court are the following motions: Defendant's Motion for Discovery [Doc. 12]; Defendant's Motion to Dismiss Indictment [Doc. 13]; and Defendant's Motion to Suppress Evidence [Doc. 14]. For the reasons discussed below, Defendant's Motion for Discovery [Doc. 12] is **DENIED**. I recommend that Defendant's Motion to Dismiss Indictment [Doc. 13] and Motion to Suppress

Evidence [Doc. 14] be **DENIED**.

I. <u>**ALLEGATIONS IN THE INDICTMENT**</u>

The relevant allegations of the indictment are summarized below.

Defendant was employed as a physician's assistant at the VA Medical Center ("VAMC") in Atlanta from 1994 through February 2010. During the relevant time period, Defendant worked in the VAMC's Wound Clinic. She had the authority to request and recommend orders of specific medical products for use in the VAMC.

Procellera is an antimicrobial wound dressing manufactured by Vomaris Wound Care, Inc., a medical company that specializes in wound care products. R.V. was the founder and president of a company that distributed Procellera in Georgia. From July 2009 through January 2010, Defendant accepted and received $500.00 per month from R.V. because of Defendant's official acts of requesting orders for, and promotion of, Procellera at the VAMC. The last such payment from R.V. was deposited by Defendant on January 26, 2010. Defendant repeatedly requested orders for Procellera and promoted its use at the VAMC from August 2009 through February 2010 while she was receiving money from the distributor of Procellera.

In December 2009, Defendant told the VAMC that she was considering leaving the VAMC to accept a job with Vomaris. The VAMC instructed Defendant

2

not to participate in any matter regarding Vomaris while she was negotiating for employment with Vomaris.  Defendant did not disclose to the VAMC that she had been receiving payments from a distributor of Vomaris's product.  Defendant resigned from the VAMC on February 10, 2010 to accept a job with Vomaris.

## II.   DISCUSSION OF DEFENDANT'S ARGUMENTS ON MOTION TO DISMISS INDICTMENT

### A.   Statute of Limitations

Defendant argues that the indictment should be dismissed prior to trial because the indictment was returned after the expiration of the statute of limitations. The applicable statute of limitations requires that the indictment be returned within five years of the commission of the offenses.  18 U.S.C. § 3282(a).  The indictment was filed on January 6, 2015.  [Doc. 1].  Thus, the issue is whether the indictment charges that the offenses were committed after January 6, 2010.  If so, there is no basis to dismiss the charges before trial.

Count One charges a violation of the general conspiracy statute, 18 U.S.C. § 371.  Section 371 requires proof of an agreement by two or more persons to combine their efforts for an illegal purpose, and an overt act by one of those persons in furtherance of the agreement.  United States v. Davis, 533 F.2d 921, 926 (5th Cir.

AO 72A
(Rev.8/82)

1976).[1] The statute of limitations for violations of the general conspiracy statute runs from the date of the last overt act committed in furtherance of the conspiracy. Grunewald v. United States, 353 U.S. 391, 396-97, 77 S. Ct. 963, 969-70 (1957) ("For where substantiation of a conspiracy charge requires proof of an overt act, it must be shown both that the conspiracy still subsisted within the [period of limitations] prior to the return of the indictment, and that at least one overt act in furtherance of the conspiratorial agreement was performed within that period."); United States v. Dynalectric Co., 859 F.2d 1559, 1564 n.6 (11th Cir. 1988) (stating that if an overt act is necessary for the commission of the conspiracy, then "the indictment must charge and the evidence at trial must show that an overt act in furtherance of the conspiracy was made in the limitation period.").

The indictment in this case alleges that the conspiracy continued "through in or about February 2010" and that one of the overt acts occurred on or about January 26, 2010 when, in furtherance of the conspiracy, Defendant deposited a check from R.V. for $500.00 into her bank account.[2]  [Doc. 1 ¶¶ 5(i), (j)].

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all decisions of the former Fifth Circuit decided before October 1, 1981.

[2] The indictment also alleges in the overt-acts section of the indictment that Defendant "repeatedly requested orders for Procellera and promoted use of the product,

4

Defendant argues that her receipt and deposit of the $500.00 on January 26, 2010 was not in furtherance of the conspiracy, but rather "the result of a purported conspiracy long since completed." [Doc. 13 at 9]. However, the government contends that the $500.00 January 26, 2010 payment to Defendant from R.V. was a gratuity that was given to Defendant because of her official acts of promoting and making recommendations and requests for orders of Procellera. Indeed, that payment is the basis of Count Two of the indictment, which charges receipt of a gratuity by a public official. Thus, while the Defendant may disagree with the allegations,[3] the government has sufficiently alleged -- and has to be given an opportunity to prove -- that the $500.00 payment on January 26, 2010 was an overt act in furtherance of the alleged conspiracy.

---

all in her official duties at the VAMC," from August 2009 through February 2010. [Doc. 1 ¶ 5(j)]. However, because this section of the indictment does not charge a specific act on a specific date, I will focus my discussion and ruling on the allegation of the January 26, 2010 deposit of $500.00.

[3] Defendant contends that the $500.00 payment in January 2010 was "a routine payment for consulting services rendered by Defendant." [Doc. 19 at 2]. Defendant also recites facts relating to the timing of the investigation, an AUSA's earlier declination of prosecution, and Defendant's conduct that contradicts the government's theory of the case and is consistent with Defendant's innocence. [Id. at 2-3]. All of these facts are irrelevant to the issue before this court.

5

Defendant relies on cases in which courts held that the only events that occurred within the statute of limitations were not overt acts *in furtherance of* the conspiracy, but rather events that occurred *as a result of* the conspiracy.  See United States v. Doherty, 867 F.2d 47 (1st Cir. 1989) (italics added); United States v. Grimm, 738 F.3d 498 (2d Cir. 2013).  In Doherty, the court held that a conspiracy charge against one defendant was time-barred because the alleged fraudulent act -- receipt of a stolen civil service examination that was used to earn a promotion -- occurred outside the limitations period, and the only events within the limitations period were salary payments based on the higher salary received as a result of the promotion.  Doherty, 867 F.2d at 62.  The court recognized that in some situations, the act of receiving an objective of the conspiracy is part of the conspiracy, such as where such actions take place over a limited period of time.  However, the court in Doherty reasoned that the conspiracy did not continue:

> [W]here receiving the payoff merely consists of a lengthy, indefinite series of ordinary, typically noncriminal, unilateral actions, such as receiving salary payments, *and* there is no evidence that any concerted activity posing the special societal dangers of conspiracy is still taking place, we do not see how one can reasonably say that the conspiracy continues. Rather, in these latter circumstances, one would ordinarily view the receipt of payments merely as the "result" of the conspiracy.

Id. at 61 (italics in original).

6

In Grimm, the defendants were indicted for conspiracy to commit wire fraud. Grimm, 738 F.3d at 499. The indictment alleged that the defendants had fixed below-market rates on interest paid by General Electric Company ("GE") to municipalities on guaranteed investment contracts ("GICs") in which the municipalities were required to invest the proceeds of tax-exempt bond issues. The government relied on interest payments subsequently made by GE to the municipalities under the GICs as the only overt acts within the statute of limitations. The court held that these indefinite, periodic interest payments on a noncriminal investment well after the fraudulent acts were completed did not constitute overt acts in furtherance of the conspiracy. Id. at 513.

Doherty and Grimm are not similar enough to the instant case to provide guidance to the court. In the current matter, it is not necessary for the court to determine whether the term of the conspiracy extended to include non-criminal payments that were made well after the conspiratorial agreement had ended but were related to the objectives of the conspiracy. Unlike the circumstances in Doherty and Grimm, in this case, the overt act at issue (the $500.00 payment in January 2010) is alleged to be a criminal act that is at the core of the conspiracy.

7

A much more similar case is United States v. Bustamante, 45 F.3d 933 (5th Cir. 1995). Bustamante was charged with a violation of the Racketeer Influenced and Corrupt Organizations statute ("RICO") and RICO conspiracy, with illegal gratuities listed as predicate acts. Bustamante argued that the statute of limitations had expired on the gratuity charges because more than five years had passed since he accepted the first gratuity benefit. Id. at 942. The court held that since Bustamante had been charged with accepting illegal gratuities over an extended period of time, he was charged with continuing criminal behavior, and the acceptance of the last gratuity occurred within the five year limitations period. Id.

Here, like the situation in Bustamante, the government has argued -- and should be given the opportunity to attempt to prove – that the $500.00 payment on January 26, 2010 was an additional gratuity as part of a continuing offense, and thus an overt act within the statute of limitations.

Although Defendant does not make a separate statute of limitations argument as to Counts Two and Three, both counts clearly charge offenses committed within the five-year statute of limitations. As stated above, Count Two charges that the $500.00 payment on January 26, 2010 was an illegal gratuity, and Count Three charges that through February 2010, Defendant's promotion, recommendation, and

8

placement of orders at the VAMC for Procellera occurred while she was receiving payments from a Procellera distributor and negotiating for prospective employment with Vomaris, in violation of the conflict-of-interest statute, 18 U.S.C. § 208(a).

### B. The court cannot dismiss a properly charged count of the indictment prior to trial based on Defendant's argument that she is not guilty of the offense charged.

As stated above, Defendant is charged in Count Three of the indictment with a violation of 18 U.S.C. § 208(a), which prohibits government employees from performing certain acts that affect their personal financial interest. Defendant does not allege that Count Three fails to state an offense or omits any essential elements of the offense. Rather, she contends that she is not guilty of the offense because the facts demonstrate that Section 208(b)(1) (which shields employees from criminal liability if they fully disclose the conflict to certain government officials and receive a written opinion that the conflict is insubstantial) applies here.[4]

Defendant's proffered facts and argument would certainly be relevant arguments to a jury or to the trial judge at the close of the government's case, but they are not a basis for pre-trial dismissal of the indictment. See United States v. deVegter, 198 F.3d 1324, 1326-27 (11th Cir. 1999) ("[A] court may not dismiss an

---

[4] Defendant goes into more detail supporting her innocence in her Reply Brief. [Doc. 19 at 3-6].

9

indictment . . . on a determination of facts that should have been developed at trial.") (citation omitted).  "There is no summary judgment procedure in criminal cases." United States v. Critzer, 951 F.2d 306, 307 (11th Cir. 1992).  Thus, there is no basis to dismiss Count Three of the indictment prior to trial.

### C. Defendant's allegation of prosecutorial misconduct does not support dismissal of the indictment.

Defendant also argues that the indictment should be dismissed because the government engaged in prosecutorial misconduct by knowingly presenting false evidence to the grand jury.  More specifically, Defendant alleges that:

> [T]he Government's time barred and false presentment to the grand jury suggested that Ms. Worth engaged in voluminous Procellera ordering. To the contrary, after Ms. Worth's resignation, the VAMC payments to Vomaris for Procellera did not decline, or even remain the same, but actually increased $33,657.55. (See Exhibit E, VAMC-00259).
>
> Based on this clear evidentiary record –  in the possession of the Government both prior to and during the grand jury proceedings  – the Government knew or should have known that the evidence presented to the grand jury was false.  In any event the Government presented a false picture of the evidence to the grand jury to secure its indictment and thereby engaged in prosecutorial misconduct.

[Doc. 13 at 13-14].

10

As an initial matter, as the government notes, Defendant does not know what evidence was presented to the grand jury. In any event, a court may not dismiss an indictment, even for prosecutorial misconduct, without a showing "'that the violation substantially influenced the grand jury's decision to indict.'" Bank of Nova Scotia v. United States, 487 U.S. 250, 256, 108 S. Ct. 2369, 2374 (1988) (quoting United States v. Mechanik, 475 U.S. 66, 78, 106 S. Ct. 938, 945 (1986) (O'Connor, J., concurring)).

Defendant's argument is based on her factual allegation that after her resignation, the VAMC's orders of Procellera actually increased. Defendant argues that the increase in Procellera orders after her departure demonstrates that she did not cause the VAMC to over-order Procellera. This allegation, even if true and not presented to the grand jury, is not a basis for dismissal of the indictment. The charges in the indictment do not require proof that orders of Procellera increased as a result of Defendant's actions. Thus, there is no basis to conclude that prosecutorial misconduct occurred, much less that it substantially influenced the grand jury's decision to indict.

Moreover, even if such evidence existed (which the government denies) and was substantially favorable to Defendant, a district court may not dismiss an

11

otherwise valid indictment on the ground that the government failed to disclose to the grand jury substantial exculpatory evidence.  See United States v. Williams, 504 U.S. 36, 55, 112 S. Ct. 1735, 1746 (1992); United States v. Waldon, 363 F.3d 1103, 1109 (11th Cir. 2004) ("The government is under no duty to bring exculpatory evidence to the grand jury's attention.").

For these reasons, Defendant's allegation of prosecutorial misconduct does not support dismissal of the indictment.

### III.   DISCUSSION OF DEFENDANT'S MOTION IN LIMINE TO SUPPRESS AND EXCLUDE TIME-BARRED EVIDENCE

Defendant argues that the government should not be permitted to introduce at trial evidence that predates January 6, 2010 -- *i.e.*, evidence of events that occurred outside the statute of limitations.  [Doc. 14].  This argument is without merit.  "The statute of limitations is a defense to prosecution, not a rule of evidence.  Therefore, once prosecution is timely instituted, the statute of limitations has no bearing on the admissibility of evidence."  United States v. Ashdown, 509 F.2d 793, 798 (5th Cir. 1975).  As long as it is relevant to the charges in the indictment, the government may introduce evidence of events that took place more than five years before the return of the indictment.  Id.; see Fed. R. Evid. 401 (defining relevant evidence).

12

For this reason, Defendant's Motion in Limine to Suppress and Exclude Time-Barred Evidence [Doc. 14] should be denied.

## IV. DISCUSSION OF DEFENDANT'S MOTION FOR DISCOVERY

Defendant's Motion for Discovery [Doc. 12] requests the following six categories of information:

1. Copies of all reports and memoranda connected with the said charges against the named defendant;

2. All written statements of witnesses in the possession of the prosecutor relating to the charges against the named defendant in the above-styled indictment;

3. Names, addresses, and telephone numbers and whereabouts of all witnesses to be called by the government;

4. Statements of all persons including memoranda, summaries or recordings of such statements of any person, made to any law enforcement officer or the investigative staff of any prosecutor in any way connected with the above-styled indictment;

5. The full names and addresses of all persons who have given information to the prosecuting attorney relating to the charges against defendant; and

6. The transcript, minutes, and record of the Grand Jury proceeding in connection with the above-styled indictment.

[Id.].

13

During the status conference on February 27, 2015, Defendant admitted that the government already had complied with categories 1, 2, and 4 of her motion, and the court denied her requests in categories 3 and 5.

The government states that it has already given all written witness statements to Defendant. Defendant has shown no particularized need for the additional information requested in categories 3 and 5. Of course, the government is required to give to the Defendant any exculpatory information pursuant to Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194 (1963) and its progeny. However, there is nothing in the Federal Rules of Criminal Procedure that requires the government to disclose the information requested in categories 3 and 5 of Defendant's motion unless it is arguably exculpatory. The court will assume, as it usually does, that the government has complied with its obligations under Brady without the necessity of court intervention.

Similarly, with respect to Defendant's request for the record of all grand jury proceedings, Defendant has shown no particularized need for these materials. "A defendant must show 'particularized need' to justify infringement of the secrecy surrounding a grand jury. ... [U]nsubstantiated allegations of grand jury manipulation do not satisfy the 'particularized need' standard." United States v.

14

Cole, 755 F.2d 748, 758-59 (11th Cir. 1985) (citation omitted); United States v. Tucker, 526 F.2d 279, 282 (5th Cir. 1976) (showing of need justifying disclosure of grand jury transcripts must include more than an unsubstantiated assertion of impropriety).  Therefore, Defendant's request in category 6 is denied.

## V.   CONCLUSION

For the reasons stated above, I hereby **ORDER** that Defendant's Motion for Discovery [Doc. 12] is **DENIED**.  I **RECOMMEND** that Defendant's Motion to Dismiss Indictment [Doc. 13] and Motion to Suppress Evidence [Doc. 14] be **DENIED**.

There are no pending matters before me, and I am aware of no problems relating to the scheduling of this case for trial.  It is therefore **ORDERED AND ADJUDGED** that this action be declared **READY FOR TRIAL**.

It is so **ORDERED** and **RECOMMENDED**, this 22nd day of April, 2015.

_Gerrilyn G. Brill_
GERRILYN G. BRILL
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)